**Lelia SPURLOCK et al., Appellants,**

**v.**

**Howard CARTER, Appellee.**

Court of Appeals of Kentucky.

Feb. 28, 1958.

William B. Buford, William Hill Mackey, Nicholasville, for appellants.

John S. Deering, Nicholasville, for appellee.

STEWART, Judge.

This action was brought by plaintiffs-appellants against appellee-defendant, Howard Carter, for an accounting. The lower court charged Carter with being indebted to the trust estate in the sum of $5,776.55 for one half the net proceeds derived from the sale of tobacco grown on the farm of which he was trustee during the years 1949 through 1953, the period of time involved. Covering the same years he was allowed credit for expenditures totaling $6,815.17. Thus the excess of expenditures over charges for tobacco raised amounts to $1,038.62, from which figure Carter was adjudged to deduct one third, since he was one of three heirs at law sharing in the trust proceeds, and the estate was ordered to reimburse him

the balance of $692.41. This appeal is prosecuted by plaintiffs from this ruling of the circuit court.

Grover Carter, the father of appellee, Howard Carter, owned in his lifetime about 40 acres of land in Jessamine County, which lies on both sides of Sugar Creek pike. On March 29, 1949, Grover Carter deeded this farm to his son, Howard Carter, in consideration of the assumption of the payment of a mortgage indebtedness against it and in further consideration of an agreement of appellee to support his father during the latter's life. The father also reserved the right to reside on the property.

Appellee owns several tracts of land comprising 280 acres near his father's farm and he took over the 40 acres and farmed it in conjunction with his land as one operation. On June 17, 1952, his father died and some two months thereafter his two sisters, Lelia Spurlock and Madelene Montgomery, the other two heirs at law of Grover Carter, their husbands joining in, all of whom are appellants herein, instituted an action against appellee and his wife to cancel the above conveyance. On November 17, 1953, they were successful in this suit, and the judgment entered, besides voiding the deed, ordered appellee to make and file with the Jessamine Circuit Court a settlement of his receipts and disbursements as trustee for the years 1949 to 1953, inclusive. This settlement, dated May 8, 1956, precipitated the present litigation, and the findings and judgment of the lower court have been heretofore noted.

Appellants raise no question as to the correctness of the item of $5,776.55 charged for tobacco produced on the trust farm for the years in question, except that they maintain this amount had reference only to the quantity of tobacco attributable to the base allocated to the Grover Carter farm from 1949 through 1953. This base ran as high as 3.8 acres in 1949 and as low as 3.2 acres in 1953. In their exceptions entered to the settlement they contend appellee produced on the trust farm in 1951 6.88

acres of his own tobacco in addition to the 3.6 acres allotted to the farm for which he should be charged at the rate of $125 per acre the total sum of $860; in 1952 9.13 acres of his own tobacco in addition to the 3.6 acres allotted to the farm for which he should be charged at the rate of $125 per acre the total sum of $1,141.25; and in 1953 9.63 acres of his own tobacco in addition to the 3.2 acres allotted to the trust farm for which he should be charged at the rate of $125 per acre the total sum of $1,203.75.

Appellants claim appellee should also be held liable for these items in connection with the use of the farm for the trust period: For pasturing his own cattle, $594; for keeping his own hogs on the place, $500; for raising corn which he retained, $50; and for harvesting hay from the land which he appropriated, $600. Aside from these sums, appellants assert that appellee took possession of tobacco sticks belonging to the trust estate and disposed of them in some manner during the trust period, which did not result from normal wear and tear and breakage, for which he should be charged $125.

Appellants concede appellee properly established he had disbursed in behalf of the estate the sum of $3,962.56. It will be recalled the lower court allowed him $6,815.17 as and for expenses incurred by him in carrying out his trust. Appellants maintain appellee owes the difference between these sums because he kept no receipts of disbursements made by him as to this difference or he failed to establish the items making up this difference in the manner required by law.

The trial judge was of the opinion that appellants were not entitled to any rent for appellee's growing his own tobacco on his father's farm for any of the years in litigation for a reason soon to be given. Appellee introduced proof to the effect that when he took possession of the farm it was run down, its buildings and fences were in a sad state of repair and the land was worn

out. According to appellee's evidence, appellee cleared the land of bushes and cedar and locust trees, removed rocks from certain portions of it, built new fences or repaired old ones, restored all the buildings in good condition, and, through the use of commercial fertilizers and manure, built the soil up to a high state of productivity. Certain of his witnesses testified he increased the value of the trust farm as much as $2,000 by performing the acts mentioned. The lower court held that this sum of $2,000 claimed by appellee for improving this farm was substantially proven and that this amount should offset any rent he might owe for growing his own tobacco on his father's land.

The lower court found that appellants had failed to prove they were entitled to any rent for pasturing cattle or keeping hogs on the trust farm, and it ruled that it was not established appellee had grown any corn on the land or removed any hay therefrom. Nor did the trial judge regard with favor their claim of $125 for the alleged disappearance of the tobacco sticks.

█ .We are unable to accept the lower court's finding that appellee's proof showed he should receive an allowance of $2,000 for improving the trust farm in the manner indicated. Although appellee's evidence tended to point up that he added to the over-all worth of the farm, appellants introduced many witnesses who testified the farm was not enhanced in value to any appreciable extent by appellee's efforts. Aside from the contradictory nature of the evidence in this respect, appellee included in his settlement every item of expense he was out of pocket in rehabilitating the buildings and erecting fences and in clearing the land and restoring it to fertility. Therefore, to allow him $2,000 for improving the farm in addition to permitting him to keep the money he credited himself with out of the trust fund in accomplishing the same result would be to pay him twice for the same services.

Although the lower court's findings of fact indicated appellee's labor on the trust farm had appreciated its worth to the extent of $2,000, it did not rule that this indebtedness was to be considered a charge against the trust fund; rather, as has been mentioned, it adjudged that this $2,000 allowance should cancel out appellants' rent demand for tobacco allegedly grown on the trust farm by appellee in excess of the base allotted to that farm. Hence, we must hold that this ruling of the trial judge was clearly erroneous. See CR 52.01.

█ Coming now to the contention that appellee combined his tobacco base with his father's and grew the entire crop during 1951, 1952 and 1953 on the trust farm and therefore owed rent for the extra land used, it is our view the proof shows that appellee raised his tobacco together with his father's allotment only one year, namely during 1953, on the trust farm. This point is fully borne out by Clyde Teater who testified he measured the land set out in tobacco by appellee that year, and Teater disclosed appellee produced approximately 12 acres of tobacco on the Grover Carter farm in 1953. Appellee virtually admitted Teater's testimony was true. There is no definite evidence that appellee grew any tobacco on his father's farm above its base during 1951 and 1952. Accordingly we must hold that appellants' claim for rent of $1,141.25 for use of his father's land in 1953 should be charged to appellee in his settlement.

█ The lower court's findings of fact disallowed all the other claims asserted against appellee by appellants. These included pasturing cattle on the land, keeping hogs thereon, raising corn and hay on the farm and disposing of the tobacco sticks. The evidence is sharply in conflict on the question of whether appellee should or should not be charged with any of these items. Appellants also contend appellee did not prove in the manner required by law his expenses aggregating $6,815.17. The lower court found against them on this score, as has been stated.

We cannot say that the lower court's findings of fact are clearly erroneous as regards any of its credits and charges, except as to its permitting appellee an offset of $2,000 against appellants' demand for rent due for tobacco allegedly produced by appellee on the trust farm, and except for its failure to charge appellee with $1,141.25 as rent for raising his own tobacco on his father's farm in 1953. See CR 52.01.

It follows that when appellee is made liable for the additional sum of $1,141.25, his total indebtedness to the estate will amount to $6,917.80. If we deduct from this figure $6,815.17, the amount he was allowed for all his disbursements, it is shown appellee is indebted to the estate two-thirds of the sum of $102.63.

Wherefore, the judgment is reversed in that it allows $2,000 to appellee as an offset to any indebtedness supposedly due appellants for tobacco grown on the trust farm and in that it disallows appellants' claim of $1,141.25 for tobacco produced on the trust farm in 1953. In all other respects the judgment is affirmed.